UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO AUGUSTO DIAS<br><br>Plaintiff,<br><br>-against-<br><br>A ROYAL FLUSH OF NEW YORK II, INC. d/b/a<br>A ROYAL FLUSH, INC. and WILLIAM<br>MALONE<br><br>Defendants. | Civil Action No. 1:15-cv-4687-ALC<br><br>**JOINT MOTION FOR APPROVAL<br>OF SETTLEMENT**<br><br>VIA ECF |

Plaintiff Roberto Augusto Dias ("Plaintiff") and Defendants A Royal Flush of New York II, Inc. ("A Royal Flush" or the "Company") and William Malone (collectively, "Defendants") (with Plaintiff, referenced as the "Parties"), file this Joint Motion for Approval of Settlement and Dismissal with Prejudice of All Claims.

## SETTLEMENT AND DISMISSAL OF CLAIMS

1.     In this action, *"Roberto Augusto Dias v. A Royal Flush of New York II, Inc., d/b/a A Royal Flush, Inc. and William Malone"*, Plaintiff alleged, *inter alia*, that the Company failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and that the Company failed to provide accurate annual wage notices and/or wage statements in violation of the NYLL (the "Complaint").

2.     Further, Plaintiff, through his counsel, notified the Company and the Court of his intention to move for leave to file an Amended Complaint alleging additional causes of action stemming from Plaintiff's contractual relationship with the Company (for e.g., retaliation and constructive discharge).   Moreover, during settlement discussion and during an in-person settlement conference with Magistrate Judge Freeman, Plaintiff raised new allegations of

discrimination and other claims of unfair and allegedly illegal treatment arising out of his relationship with the Company.

3.      While the parties continue to dispute whether Plaintiff was an independent contractor or employee, the applicability of the Motor Carrier Act exemption, the amount of overtime wages owed, if any, and the merit of Plaintiff's alleged discrimination, retaliation and constructive discharge claims should Plaintiff be deemed an employee and Defendants continue to deny each and every claim made by Plaintiff in this action, the Parties desire to fully and finally resolve any and all of Plaintiff's claims in the action without the expense of further litigation.

4.      In furtherance of the Parties' mutual desire to resolve their dispute without further litigation between them, they have entered into a Settlement Agreement and General Release (the "Agreement"), a copy of which is attached hereto as **Exhibit A**. The Parties have agreed to these settlement terms in order to avoid the cost of litigating the action.  By agreeing to these terms, Defendants do not admit that they violated any federal, state, or local law, rule, regulation, or ordinance; that any action taken with respect to Plaintiff was wrongful or unlawful; or that the Company breached any of its policies or procedures.  The primary purpose of this Motion is to request the Court's approval of the Agreement in accordance with the requirements of the FLSA and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).  In *Cheeks,* the Second Circuit ruled that: ". . . stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Id.* at 206.

5.      Thus, the FLSA places certain limits on a current or former employee's ability to waive claims for unpaid wages or overtime under 29 U.S.C. § 216.  With only two exceptions, employees cannot waive FLSA claims for unpaid wages or overtime.  The two exceptions are

for: (1) settlements approved by the Department of Labor, and (2) judicially-approved stipulated settlements. *Id.*

6.     The Parties represent to the Court that the Agreement: (a) is fair to all Parties; (b) reasonably resolves bona fide disagreements between the Parties with regard to the merits of the Plaintiff's claims; and (c) demonstrates a good faith intention by the Parties that the Plaintiff's claims for liability and damages be fully and finally resolved, and not re-litigated in whole or in part at any point in the future.

7.     In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See Id.* at 203, n.3.  The Parties in this case believe their settlement is fair and reasonable under the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012) (Furman, J.).

8.     Based on Plaintiff's allegations regarding constructive discharge and retaliation, in addition to the FLSA claims pleaded in the Complaint, the Agreement contains a Mutual Release, for which Plaintiff was compensated.  This is permitted post-*Cheeks*, as the Parties negotiated these claims at mediation before the Court, Plaintiff received compensation above what he would have received for his FLSA claims, and the release is mutual.  *See Souza v. 65 St. Marks Bistro*, No. 15-327 (JLC), 2015 WL 7271747 (S.D.N.Y. Nov. 6, 2015) (analyzing *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir.2015) and *Lopez v. Nights of Cabiria LLC*, No. 14–1274 (LAK), 2015 WL 1455689 (S.D.N.Y. Mar. 30, 2015), and holding a mutual general release may be permissible in FLSA claims).

**Plaintiff's Potential Recovery**

9.     The first *Wolinsky* factor examines "the Plaintiff's range of possible recovery."  In this case, the Company contracted with Dias in September 2011 as a driver at an agreed-upon rate of $15.00 per hour until May 2015, when this rate increased to $16.67 per hour.

10.     Plaintiff asserts he was improperly classified as independent contractors and was actually an employee, and therefore owed overtime for all hours worked in excess of 40 hours per week.  The Parties do not dispute that Plaintiff was paid his agreed-upon hourly rate for all hours worked.

11.     Dias' duties included driving a service truck weighing at least 10,001 pounds from New York to New Jersey from New York to Connecticut.  When not performing interstate driving duties, Dias' duties also included cleaning portable toilet units and safely loading the units onto the trucks for interstate transportation.  Dias was also responsible for loading units onto trucks weighing at least 10,001 pounds at the New York branch to ensure safe transportation to New Jersey.

12.     It is Defendants' position that Plaintiff was an independent contractor and, therefore, cannot sustain the claims alleged in the Complaint.  Moreover, Defendants contend that, even if Plaintiff was an "employee" of the Company, he is exempt from overtime pay under the Motor Carrier Act (MCA) exemption.  Under the MCA exemption, employees are not subject to the overtime provisions of the FLSA (or New York law) so long as:  (1) the employee must be employed by a motor carrier; and (2) the employee's job duties must "directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act".  *See* 29 C.F.R. § 782.2-782.6; *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 872 (3d Cir. 2015); *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) (citing 29 C.F.R. §782.2(a)).  Additionally, the MCA overtime exemption applies not only to drivers, but also applies to loaders.  The MCA defines a "loader" as one whose duties include "the proper loading of . . . motor vehicles so that they may be safely operated on the highways of the country."  29 U.S.C. § 213(b)(1); 29 C.F.R. §§ 782.2(b)(2)(i) and 782.5(a).  The vehicles used by Plaintiff in

performing his job duties constitute "commercial motor vehicles", which is defined – for purposes of this analysis – as having a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds. *See* 49 U.S.C. § 13102(14).

13.     Plaintiff further alleges the Company failed to provide the required wage notification in violation of NYLL.  While neither party has calculated the alleged money owed for the deductions, such amounts are minimal and Plaintiff seeks a maximum amount of $5,000 each for the alleged failure to provide the wage notification.

14.     Absent settlement of this matter, Plaintiff intends to file an Amended Complaint alleging retaliation and constructive discharge.  Plaintiff alleges his hours were reduced to 40 hours per week after filing the Complaint and he was forced to stop contracting with the Company because he was not earning enough money.  Even if Plaintiff were deemed an employee, it is Defendants' position that working 40 hours per week at a rate of $16.67 does not constitute" working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993) (internal quotation marks omitted).  However, if Plaintiff were to succeed in his claim that the reduction of hours was retaliatory, his alleged damages would be between approximately $8,000 - $9,000.

15.     Pursuant to the settlement between Plaintiff and the Company, Plaintiff will receive $25,000.  This represents the penalty and compensation for the alleged failure to provide the wage notification and compensation for the alleged discrimination, retaliation and constructive discharge claims, although they are not pleaded in the Complaint.  As set forth above, Defendants believe their defense, based on the MCA exemption, is very strong and the Parties agree that $25,000 represents a fair and reasonable settlement amount for the disputed claims.

**Expense of Continued Litigation**

16.     The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'"  Settling Plaintiff's claims at this point will avoid continuing litigation costs for all Parties.  Cognizant of this, the Parties requested a stay of discovery and postponed exchanging initial disclosures and formal discovery requests in an effort to reach a resolution without incurring significant costs.  Had this action not settled, Plaintiff intended to file a Motion seeking leave to file an Amended Complaint, all Parties would have had to prepare Initial Disclosures, engage in formal written discovery pursuant to Rules 33 and 34 and conduct several depositions including Plaintiff's, the Company's agents, and the individually named Defendant. Settlement at this point will obviate such time-consuming and expensive litigation.

**The Risks of Litigation**

17.     The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties."  All parties face the risk of losing.  Plaintiff could be found to be an independent contractor, not employee, and therefore not entitled to any compensation, including the fines for the Company allegedly violating the NYLL by failing to provide proper wage notifications. Even if deemed to be an employee, the Parties risked spending excessive time litigating whether Plaintiff was exempt under the Motor Carrier Act and therefore, only entitled to the wage notification penalty, which the Company is paying as part of the Agreement.  Likewise, the Parties risked spending time and money litigation the retaliation and constructive discharge matters, which are resolved by the Agreement.  At the same time, Defendants face the inherent risks and expenses imposed by litigation and liability for overtime compensation if Plaintiff was found not to be exempt under the Motor Carrier Act.

**Arm's Length Negotiation**

18.     The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" The settlement negotiations took place over several months and consisted of debate concerning the merits and value of Plaintiff's claims and the Company's defenses.  The Company provided Plaintiff with copies of his pay stubs and with a detailed letter outlining the applicability of the Motor Carrier Act exemption, as well as executed declarations detailing Plaintiff's job duties.   Settlement discussions continued during a mediation conference in Court, before the Honorable Debra Freeman, U.S.M.J.  During mediation, counsel argued the facts, the law, and what constituted an appropriate settlement.  These discussions included conversations about claims not pleaded in the Complaint, including retaliation and constructive discharge.

19.     All Parties in this matter are represented by competent and experienced counsel. Plaintiff's counsels' practice, Helen F. Dalton & Associates, P.C., was founded in 1995 and focuses on personal injury and labor law.  Roman M. Avshlumov, Esq., plaintiff's counsel, is the firm's managing attorney and director of its labor law department.   Likewise, Defendants are represented by Littler Mendelson, P.C., one of the leading wage and hour defense firms in the country.  Michael Grosso, Esq. is a Shareholder with the firm and specializes in wage and hour defense.

20.     The Agreement between the Parties provides that Plaintiff's counsel will receive $7,000.00 in costs and fees, as part of the total settlement of $25,000.  The retainer agreement between Plaintiff and his counsel sets forth a contingency fee of one-third (1/3) of any settlement plus reimbursement of our actual litigation costs, which comes to a total of $8,333.33. However, to allow for this settlement to take place, Plaintiff's attorneys have agreed to cut their attorneys' fees and expenses.  Plaintiff's counsel requests $7,000.00, which is less than what was agreed

upon in the retainer agreement with Plaintiff. Plaintiff's cousnel also incurred $800 in expenses in this matter, which Plaintiff's attorneys are waiving. This is well within the acceptable range for fees in similar cases.

**Possibility of Fraud or Collusion**

21.     The fifth *Wolinsky* factor examines the "possibility of fraud or collusion."  There is no evidence of any fraud or collusion in this case.   The Parties engaged in an in-person settlement conference before the Court.  The settlement was only finally achieved after months of negotiations and after Defendants provided declarations and its legal position to Plaintiff.

## CONCLUSION

22.     There is no evidence of any factors weighing against approval of this settlement. There is no history of FLSA non-compliance by Defendants.

23.     The Parties respectfully request that the Court approve this settlement as fair and reasonable and enter the proposed Order attached hereto as **Exhibit B**.

**WHEREFORE**, the Parties to this Action respectfully request an Order:

1.     Approving the Agreement between Plaintiff and the Company; and

2.     Dismissing with prejudice the claims of Plaintiff against all Defendants.


**HELEN F. DALTON & ASSOCIATES, PC**     **LITTLER MENDELSON, P.C.**


By:   */s/ Roman Avshalumov*_____     By:   */s/ Michael T. Grosso*_____
        Roman Avshalumov                                      Michael T. Grosso
        69·12 Austin Street                                      One Newark Center, 8th Floor
        Forest Hills, NY 113 7 5                              Newark, NJ  07102
        Telephone: 718-263-9591                          Telephone: (973) 848-4700
        *Attorneys for Plaintiff*                              *Attorneys for Defendants*

Dated:  August 11, 2016                              Dated:  August 11, 2016

# EXHIBIT A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made by and between Plaintiff Roberto Augusto Dias, on behalf of himself, each of his heirs, estate, executors, administrators, representatives, attorneys, insurers, successors and assigns (hereinafter, collectively referred to as "Plaintiff") and A Royal Flush of New York II, Inc. on behalf of the entity itself, its past and present parents, subsidiaries, affiliates, and any and all departments, divisions, and all past and present officers, directors, supervisors, managers, agents, owners, representatives, attorneys, employees, administrators, jointly and individually, including but not limited to, A Royal Flush, Inc. and William Malone (hereinafter collectively referred to as "ARF" or "Defendant").   Plaintiff and ARF are hereinafter referenced together as the "Parties."

WHEREAS, Plaintiff filed a Complaint captioned, *"Roberto Augusto Dias v. A Royal Flush of New York II, Inc., d/b/a A Royal Flush, Inc. and William Malone"* in the United States District Court for the Southern District of New York and assigned Civil Action No. 1:15-cv-04687-ALC ("the Complaint"), alleging the named defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") in connection with Plaintiff's contractual relationship with ARF; and

WHEREAS, Plaintiff has informed ARF and the Court during an in-person settlement conference before Magistrate Judge Freeman of his intention to seek leave to file an Amended Complaint alleging additional claims, including retaliation and discrimination, relating to and arising out of his contractual relationship with ARF; and

WHEREAS, the individual defendant William Malone (the "Individual Defendant") and A Royal Flush of New York II, Inc. have each denied any unlawful conduct or wrongdoing, and all liability; and

**WHEREAS**, the Parties wish to amicably resolve any and all disputes between them, and are entering into this Agreement for the purposes of avoiding the costs of litigation, and settling, compromising and resolving any and all claims that plaintiff may have against defendants and any related entities arising from his contractual relationship with ARF, including all claims which were or could have been asserted in the Complaint; and

**WHEREAS**, in exchange for his release of all liability and the voluntary dismissal of his claims with prejudice, ARF has agreed to provide Plaintiff with certain additional compensation and consideration which it is not otherwise obligated to provide and to which Plaintiff would not otherwise be entitled;

**NOW, THEREFORE**, in consideration of the execution of this Agreement and a Stipulation of Dismissal with Prejudice, and for other good and valuable consideration, the Parties agree as follows:

- **Settlement Payment.** Within 30 days after ARF receives from Plaintiff the signed original of this Agreement and a completed Form W-9 for Plaintiff, Plaintiff's counsel, Helen F. Dalton & Associates, P.C., and after the Court in which the Complaint is pending ("the Court") enters the Order dismissing the Complaint with prejudice and approving the settlement, ARF shall pay to Plaintiff, the total agreed-upon amount of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) in two separate checks as follows:

    (a)    One check in the amount of Eighteen Thousand Dollars and Zero Cents ($18,000.00) payable to "Roberto Augusto Dias", for which a Form 1099 shall be issued to Roberto Augusto Dias; and

    (b)    One check in the amount of Seven Thousand Dollars and Zero Cents ($7,000.00) payable to "Helen F. Dalton & Associates, P.C.",

for which a Form 1099 shall be issued to Roberto Augusto Dias and Helen F. Dalton & Associates, P.C.

The foregoing payments shall represent the full, final and complete settlement of all claims by Plaintiff against ARF and all other released entities referenced below, including for any compensation, attorneys' fees, costs and expenses.

Plaintiff agrees that to the extent that any other federal, state or local taxes may be or become due or payable as a result of any of the above payments, he shall be solely responsible for paying them.  Plaintiff further agrees that he has not relied upon any representation made by ARF or any of its representatives concerning the tax treatment of said payments.  Plaintiff shall indemnify ARF from, and hold it harmless against, any claims made by administrative agencies or courts of competent jurisdiction for such unpaid taxes, including any costs and counsel fees incurred by ARF as a result of any such claims.

- **Full Payment and No Monies Owed.**  Plaintiff agrees and affirms that the payments described in Paragraph 1 above constitute adequate consideration for the release of claims described in Paragraph 3, constitute the entire amount of monetary consideration provided to him and his legal counsel under this Agreement, and that neither Plaintiff nor his counsel will seek any further compensation for any other claimed damages, costs, disbursements, or attorneys' fees in connection with any of the matters encompassed in this Agreement or any aspect of Plaintiff's contractual relationship with ARF or the termination of any such relationship.  Plaintiff further agrees and affirms that the payments provided for in Paragraph 1 constitute the entire, maximum, and only financial obligation of ARF to Plaintiff under this Agreement, and that he has been paid and/or has received all compensation, wages, bonuses, commissions~ leave (paid or

unpaid), and/or benefits to which he may be entitled and that no other compensation, wages, bonuses, commissions, other leave (paid or unpaid), and/or benefits are due to him.

- **Mutual Release.** In consideration for ARF's commitment to the arrangements described herein, Plaintiff, for himself and his agents, successors, heirs, executors, administrators and assigns, hereby irrevocably and unconditionally forever releases and discharges ARF and all of its current and former predecessors, successors, parents, affiliates, benefit plans, insurers and assigns, and each of their current and former respective owners, directors, officers, shareholders, members, trustees, administrators, employees, representatives and agents, including but not limited to, William Malone and A Royal Flush, Inc. (collectively, "the Releasees") from any and all actual or potential claims, demands, actions, causes of action or liabilities of any kind or nature, whether known or unknown, up to and including the date of this Agreement, which are related to or arising out of his relationship with ARF; including, but not limited to, all claims which were or could have been interposed in the Complaint; claims for reinstatement, unpaid compensation or benefits; claims for attorneys' fees or other indemnities; claims for breach of contract or promise, real or implied; claims for wrongful termination; claims for discrimination, harassment or retaliation of any kind; claims arising under the Fair Labor Standards Act, the Employee Retirement Income Security Act (except for vested ERISA benefits), and any similar state laws, all federal, New York state and local labor, wage and hour and employment-related laws, including, but not limited to, the New York State Human Rights Law, the New York State Whistleblower Law, the New York State Labor Law, the New York Wage Payment Laws.

For the purpose of implementing a full and complete release and discharge of the Releasees as set forth above, Plaintiff acknowledges and agrees that this Release is intended to include in its effect, without limitation, all claims known or unknown that he has or may have against the Releasees, which are related to or arisen out of Plaintiff's alleged employment and/or contractual relationship with ARF, up to and including the date of this Agreement, except for, and notwithstanding any provision to the contrary, claims which cannot be released solely by private agreement.

Plaintiff also acknowledges and agrees that while this Release does not preclude him from filing a charge with the National Labor Relations Board, the Equal Employment Opportunity Commission or a similar state or local agency, or from participating in any investigation or proceeding with such an agency, he will not personally recover monies, and expressly waives the right to recover such monies, for any complaint or charge, related to his employment or work with Releasees, filed against the Releasees with any federal, state or local board, agency or court. Plaintiff also acknowledges and agrees that he is releasing and waiving all rights to opt into or join any class or collective action for wages against ARF, that he shall not join or voluntarily participate in any such action, and that he shall not personally recover any monies from such an action, and expressly waive the right to do so.

Plaintiff further acknowledges and agrees that with the payment referenced in Paragraph 1, he has been provided with and has received all leave, reinstatement and compensation to which he was legally entitled during his contractual relationship with ARF; that he was not subjected to any improper treatment, conduct or actions as a result

of a leave, reinstatement or compensation request; and that he has no other pending claims against the Releasees.

ARF affirms that it has initiated no actions, complaints, charges or appeals against Plaintiff. Upon execution of this Agreement and Plaintiff's compliance with Paragraph 4, ARF agrees not to initiate any actions, complaints, charges or appeals against Plaintiff regarding any issues relating to or arising out of his contractual relationship with ARF, other than to enforce the terms of this Agreement.

- **Cooperation With Dismissal of Complaint.**  Plaintiff agrees to dismiss the Complaint with prejudice and will execute, or direct his attorney to execute, any further documents necessary to effectuate that dismissal.  Plaintiff also agrees to provide the utmost cooperation, and shall also direct his attorney to provide the utmost cooperation, in any further actions necessary to secure the Court's approval of this settlement and/or Agreement.

- **No Admission of Liability.**  Neither this Agreement nor anything contained in it shall be construed as an admission by ARF that it has in any respect violated or abridged any federal, state or local law or any right or obligation that it may owe or may have owed to Plaintiff.  Rather, the Parties merely seek to amicably resolve any and all disputes between them.  Accordingly, this Agreement shall not be admissible as evidence against, or as an admission by, any party except that the Agreement may be introduced in any proceeding to enforce the Agreement.

- **Entire Agreement, Modification and Severability.**  This Agreement (including the Recitals) sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understandings, written or oral, between the

parties pertaining to its subject matter. The Parties agree that this Agreement may not be modified, altered or changed except by a written agreement signed by the parties, and that if any provision of this Agreement is held to be invalid, the remaining provisions shall remain in full force and effect.

- **Enforcement.** The parties agree that any action which is not consistent with any of the terms or obligations contained in this Agreement shall be deemed a material breach. In addition to any and all other available remedies for the breach of any provision of this Agreement (none of which are waived in or by this Agreement), any party shall have the right to seek specific enforcement of this Agreement, except as to provisions which subsequently may be held invalid or unenforceable.

- **Controlling Law.** This Agreement shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York and shall be interpreted as neutral as between the Parties, without regard to any presumptions, inferences or rules of construction based on the authorship of the Agreement.

- **Counterparts.** This Agreement may be executed in counterparts, each of which shall serve as an original as against any party who signed it, and all of which taken together shall constitute one and the same document.

- **Email or Facsimile.** A facsimile or e-mail copy of this Agreement will have the same force and effect as the original. Signatures on this Agreement that have been scanned, sent via facsimile or accurately photocopied shall have the same force and effect as the original

- **21-Day Consideration Period.** Plaintiff may take up to 21 days from receiving this Agreement to consider whether or not to sign this Agreement. Plaintiff

acknowledges that if he chooses to sign the Agreement prior to the expiration of this 21-day consideration period, he do so knowingly and voluntarily, and that ARF has not asked him to shorten the time period for consideration of whether to sign this Agreement, nor has ARF threatened to withdraw or alter the benefits due prior to the expiration of the 21-day consideration period or provided different terms to Plaintiff because he chooses to sign the Agreement prior to the expiration of the 21-day consideration period. Plaintiff also acknowledges and agrees that he is hereby advised in writing to that he has the right to retain and consult with an attorney of his own choosing and that he has, in fact, retained and consulted with an attorney of his own choosing. Plaintiff confirms that, if necessary, this Settlement Agreement and General Release has been translated to him in Spanish and that he understands the terms of this Agreement and that he is signing this Agreement voluntarily.

- **Revocation Period.** Plaintiff understands that he has a seven (7) day period after signing this Agreement in which to revoke or rescind the Agreement, by sending written notification by overnight mail to Michael T. Grosso, Esq., Littler Mendelson, P.C., One Newark Center, 8th Floor, Newark, New Jersey 07102 or via facsimile to (973) 215-2615, and that, therefore, this Agreement shall not become effective or enforceable, nor shall any consideration be paid, until this seven (7) day revocation period has expired.

- **Voluntary Execution.** Plaintiff acknowledges and agrees that he:

    (a) has carefully read and fully understand all of the provisions of this
        Agreement;

    (b) understands that by signing this Agreement, he is waiving his rights
        under the Age Discrimination in Employment Act, as amended by the

Older Workers Benefit Protection Act, 29 U.S.C. § 621, et seq., as well as all rights to all claims described in Paragraph 3 of this Agreement, and that he is not waiving any rights arising after the date that this Agreement is signed;

(c) knowingly and voluntarily agrees to all of the terms set forth in this Agreement;

(d) knowingly and voluntarily intends to be legally bound by this Agreement;

(e) is receiving consideration in addition to anything of value to which he is already entitled;

(f) is hereby advised in writing to consult with an attorney prior to signing this Agreement;

(h) has not been coerced, threatened, or intimidated in any way into signing this Agreement.

NOW, THEREFORE, by signing below, the Parties have executed this Settlement Agreement and General Release, freely and voluntarily.

**THIS IS A LEGAL AGREEMENT AND RELEASE/WAIVER OF CLAIMS**
**READ CAREFULLY BEFORE SIGNING**

_____      Dated: ___8/3/16_____
Roberto Augusto Dias


A Royal Flush of New York II, Inc.



By:_____      Dated:_____
        William Malone

Older Workers Benefit Protection Act, 29 U.S.C. § 621, et seq., as well as all rights to all claims described in Paragraph 3 of this Agreement, and that he is not waiving any rights arising after the date that this Agreement is signed;

(c)  knowingly and voluntarily agrees to all of the terms set forth in this Agreement;

(d)  knowingly and voluntarily intends to be legally bound by this Agreement;

(e) is receiving consideration in addition to anything of value to which he is already entitled;

(f)  is hereby advised in writing to consult with an attorney prior to signing this Agreement;

(h) has not been coerced, threatened, or intimidated in any way into signing this Agreement.

NOW, THEREFORE, by signing below, the Parties have executed this Settlement Agreement and General Release, freely and voluntarily.

**THIS IS A LEGAL AGREEMENT AND RELEASE/WAIVER OF CLAIMS
READ CAREFULLY BEFORE SIGNING**

_____          Dated:_____
Roberto Augusto Dias

A Royal Flush of New York II, Inc.

By:_____          Dated:____8/5/16_____
William Malone

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO AUGUSTO DIAS<br><br>Plaintiff,<br><br>-against-<br><br>A ROYAL FLUSH OF NEW YORK II, INC. d/b/a A ROYAL FLUSH, INC. and WILLIAM MALONE<br><br><br>Defendants. | Civil Action No. 1:15-cv-4687-ALC<br><br><br>**PROPOSED ORDER**<br><br>VIA ECF |

AND NOW, THIS __ DAY OF _____ 2016, the Court having reviewed the case of *Roberto Augusto Dias v. A Royal Flush of New York II, Inc., d/b/a A Royal Flush, Inc. and William Malone*, and considered applicable case law, and for good cause shown, it is **ORDERED, ADJUDGED** and **DECREED** that:

1.      The individual Settlement Agreement and General Release between Plaintiff Roberto Augusto Dias and Defendants A Royal Flush of New York II, Inc. (the "Company") (together, the "Parties"),: (a) is fair to all Parties; (b) reasonably resolves a bona fide disagreement between the Parties with regard to the merits of the Plaintiff's claims; and (c) demonstrates a good faith intention by the Parties that the Plaintiff's claims for liability and damages be fully and finally resolved, and not re-litigated in whole or in part at any point in the future. The Agreement is therefore **APPROVED** by the Court.

2.      The lawsuit and the claims of Plaintiff Roberto Augusto Dias against Defendants A Royal Flush of New York II, Inc. and William Malone (collectively, "Defendants") are **DISMISSED WITH PREJUDICE** in their entirety without fees or costs except as agreed to by the Parties.

**HELEN F. DALTON & ASSOCIATES, PC**     **LITTLER MENDELSON, P.C.**

By:  */s/ Roman Avshalumov*_____        By:  */s/ Michael T. Grosso*_____
    Roman Avshalumov                          Michael T. Grosso
    69·12 Austin Street                       One Newark Center, 8th Floor
    Forest Hills, NY 113 7 5                  Newark, NJ  07102
    Telephone: 718-263-9591                   Telephone: (973) 848-4700
    *Attorneys for Plaintiff*                  *Attorneys for Defendants*

Dated:  August 11, 2016                          Dated:  August 11, 2016


**SO-ORDERED:**

_____     Dated: _____
THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE